USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 02/01/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ADELLE GOODWINE,

Plaintiff,

-v-

CITY OF NEW YORK, et al.,

Defendants.

---

15-CV-2868 (JMF)

OPINION AND ORDER (CORRECTED)

JESSE M. FURMAN, United States District Judge:

This Opinion and Order addresses what were, in effect, dueling motions from the parties in this employment discrimination case to disqualify the other side's counsel. Plaintiff Adelle Goodwine, who was employed at the New York City Department of Information Technology & Telecommunications ("DoITT") from April 2006 through February 2014, brings claims against DoITT, the City of New York, and some individual defendants at DoITT (collectively, "Defendants"). (Docket No. 17 ("Am. Compl.") ¶¶ 17-44). On October 12, 2015, Plaintiff filed a motion seeking leave to substitute Special Hagan — who previously served as DoITT's Senior Director for Equal Employment Opportunity ("EEO") — for her then counsel of record. (Docket No. 23; *see* Mem. Law Supp. Defs.' Opp'n Pl.'s Mot. Withdrawal & Substitution Special Hagan Counsel) (Docket No. 34) ("Defs.' Hagan Mem.") 1). Defendants opposed the motion on the ground that Hagan should be disqualified from representing Goodwine given her prior role in DoITT's EEO Office. (Defs.' Hagan Mem. 1). In response, Hagan filed a motion to disqualify the Assistant Corporation Counsel representing Defendants, Donna Canfield, on the ground that she may be a witness in this matter based on her own prior employment at DoITT. (Mem. Law Supp. Pl.'s Cross Mot. To Disqualify Defs.' Counsel Donna A. Canfield, Esq. (Docket No. 40)

("Pl.'s Canfield Mem.") 1; Mem. Law Opp'n Pl.'s Cross-Mot. To Disqualify Defs.' Counsel (Docket No. 49) ("Defs.' Canfield Mem.") 1).

By Order dated December 18, 2015, the Court denied both motions for "reasons to be explained in a forthcoming opinion." (Docket No. 56). This is that opinion.[1]

**LEGAL STANDARDS**

The power to disqualify an attorney is derived from a court's "inherent power to preserve the integrity of the adversary process," *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (internal quotation marks omitted), and the decision to do so is "a matter committed to the sound discretion of the district court," *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994). The Second Circuit has observed that "disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client, or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation." *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764-65 (2d Cir. 1990) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). Further, the Court of Appeals has cautioned that "courts must guard against the tactical use of motions to disqualify counsel, . . . particularly motions under the witness-advocate rule," by subjecting them "to fairly strict scrutiny." *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (internal quotation marks omitted).

---

[1] The Court's December 18, 2015 Order gave Plaintiff until January 19, 2016, to either secure new counsel or advise the Court if, in light of the "bottom-line" ruling, she wanted to keep her original counsel. On January 18, 2016, new counsel entered a notice of appearance (Docket No. 57), after which the Court relieved Plaintiff's original counsel. (Docket No. 58).

Accordingly, such motions are "viewed with disfavor" and, while "any doubts are to be resolved in favor of disqualification, the party seeking disqualification bears a heavy burden of demonstrating that disqualification is necessary." *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231-32 (S.D.N.Y. 2010); *see also Arista Records LLC v. Lime Grp. LLC,* No. 06-CV-5936 (KMW), 2011 WL 672254, at *4 (S.D.N.Y. Feb. 22, 2011) ("District courts have broad discretion to disqualify attorneys, but it is a drastic measure that is viewed with disfavor in this Circuit." (internal quotation marks omitted)). In deciding whether counsel should be disqualified, a court may consult the disciplinary rules of the American Bar Association and New York State, but those rules are not binding authority. *Hempstead Video*, 409 F.3d at 132; *Falk v. Gallo*, 901 N.Y.S.2d 99, 100 (2d Dep't 2010) (citing *S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 69 N.Y.2d 437 (1987)). Indeed, "not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video*, 409 F.3d at 132; *accord Falk*, 901 N.Y.S.2d at 100. Instead, "[d]isqualification is only warranted in the rare circumstance where an attorney's conduct 'poses a significant risk of trial taint.'" *Decker*, 716 F. Supp. 2d at 231 (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)).

## DISCUSSION

### A. The Disqualification of Hagan

Defendants opposed Hagan's participation in this case based on her prior government service at DoITT. Rule 1.11 of the New York Rules of Professional Conduct, which governs former government officers or employees, provides in relevant part that such a lawyer "shall not represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee." N.Y. R. Prof'l Conduct 1.11(a)(2); *cf. Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 753 (2d Cir. 1975) ("A starting

point is of necessity the Code of Professional Responsibility.").[2] Strangely, in addressing the question of Hagan's disqualification, the parties neither cited nor discussed Rule 1.11.[3] Instead, they relied on more general principles and the legal test relating to successive or concurrent representation. (Defs.' Hagan Mem. 3-8; Mem. Law Opp'n Defs.' Mot. To Disqualify Pl.'s Counsel ("Pl.'s Hagan Mem.") 8-13). Although that test and Rule 1.11 are not necessarily incompatible, *see, e.g.*, *McBean v. City of New York*, No. 02-CV-5426 (GEL), 2003 WL 21277115, at *2 (S.D.N.Y. June 3, 2003) (applying both that test and the predecessor to Rule 1.11 as alternative standards in evaluating whether disqualification of a former Assistant Corporation Counsel was warranted), the more general test applies awkwardly here because Hagan was not an attorney for DoITT. Moreover, as this Court has noted, the revised Rules of Professional Conduct do "draw important distinctions in assessing a successive conflict arising from prior government service as distinguished from a successive conflict arising from two private representations." *Green v. City of N.Y.*, No. 10-CV-8214 (PKC), 2011 WL 2419864, at *2 (S.D.N.Y. June 7, 2011) (comparing Rule 1.9(a) and Rule 1.11). Accordingly, the Court

---

[2] On April 1, 2009, the New York Rules of Professional Conduct became effective, replacing the Code of Professional Responsibility. Rule 1.11 is similar in substance to its predecessor, Disciplinary Rule 9-101(B), which prohibited a lawyer from "accept[ing] employment in a matter in which he had substantial responsibility while he was a public employee." Rule 1.11 further provides that "a lawyer having information that the lawyer knows is confidential government information about a person, acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person." N.Y. R. Prof'l Conduct 1.11(c). The Rule defines "confidential government information" as information "that has been obtained under governmental authority" and that "the government . . . has a legal privilege not to disclose, and that is not otherwise available to the public." *Id.*

[3] Defendants' sur-reply discussed what appear to be substantively identical prohibitions in New York City's Conflicts of Interest of Law. (Nov. 10, 2015 Ltr. (Docket No. 50) at 2-3). But those arguments did not "respond[] to new arguments made in Plaintiff's reply" and thus have not been considered by the Court. (Docket No. 55).

looked primarily to Rule 1.11 rather than to caselaw governing successive representation in assessing Hagan's participation.

Applying Rule 1.11, Defendants showed that disqualification of Hagan was warranted. While at DoITT, Hagan personally and substantially participated in DoITT's response to Goodwine's complaints of discrimination.  According to Defendants, Hagan's job responsibilities "included conducting EEO investigations," and she "participated in privileged and confidential discussions with [Defendant Carole] Post, former DoITT General Counsel Mitch Ahlbaum, and DoITT attorneys Emily Johnson and David Berman" regarding Goodwine's complaints and a lawsuit brought by Beldock, Levine & Hoffman, LLP ("Beldock") on behalf of Goodwine and other employees.  Hagan's notebook from her time at DoITT — produced to the City during discovery in Hagan's own *pro se* discrimination lawsuit against the City, *see Hagan v. City of New York*, No. 13-CV-1108 (JPO) (DCF) — documents her participation.  In one note, Hagan wrote Goodwine's name and the names of five other City employees under the heading "Bedlock Levine," in reference to the firm representing a group of DoITT employees.  (Decl. Assistant Corp. Counsel Donna A. Canfield Supp. Defs.' Opp'n (Docket No. 34), Ex. C ("Hagan's Redacted Notes"), at 7; Decl. Special Hagan ("Hagan Decl."), Ex. 5).  To the right of that list, Hagan wrote: "Need to review EEOC complaints of each."  (Hagan's Redacted Notes at 7; Hagan Decl., Ex. 5).  According to the notes, Bedlock appeared to be seeking to form a class. (Hagan's Redacted Notes at 7; Hagan Decl., Ex. 5).  And a different note states: "Adele Goodwine — ring leader of class."  (Hagan's Redacted Notes at 9).  Significantly, a note regarding a December 1, 2010 meeting with the heading "Agenda: 1on1 Comm. Post" has, as the very first item written below: "Find out about Adele Goodwine."  (*Id.* at 10).

When combined with other references in Hagan's diary to Goodwine, this note from Hagan's exchange with Post, the Commissioner of DoITT and a Defendant in the instant lawsuit — regardless of whether it was a note to herself to ask Post about Goodwine or an instruction from Post to learn more about Goodwine — demonstrates that Hagan's participation in this matter was "substantial" enough to place it within the scope of Rule 1.11(a).  And the Court has no trouble finding that the two matters are "the same": they involve or involved the same plaintiff, the same legal theory, and the same defendants.  (*Compare* Hagan Decl., Ex. 9 (letter from DoITT attorney to EEOC setting out Goodwine's complaints as of June 2009), *with* Am. Compl.).  *See Green*, 2011 WL 2419864, at *2 (disqualifying an attorney pursuant to Rule 1.11 and noting that "while the same legal theory would not be sufficient to make two matters the same, the matters might be the same even though they pertain to different lawsuits with different parties"); *McBean*, 2003 WL 21277115, at *2 (defining a matter as "a discrete and isolatable transaction or set of transactions between identifiable parties"); *cf. Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*, No. 13-CV-6726 (DLC), 2014 WL 1257775, at *3 (S.D.N.Y. Mar. 27, 2014) (finding no violation of Rule 1.11(c) where the former government attorney at issue did not learn any information while in government about the present action's particular defendant).

Plaintiff's arguments against disqualification missed the mark.  It is not significant, for example, that Goodwine happened to be on leave during Hagan's tenure at DoITT, or that Hagan did not have access to *all* of the legal files regarding Goodwine's complaint, or that Hagan worked on other matters while at DoITT.  (*See* Pl.'s Hagan Mem. 6, 11, 13-14; Hagan Decl 10-13, 27, 31).  All that is required to trigger Rule 1.11(a)'s bar on future representation is that Hagan's participation in DoITT's response to Goodwine's complaints be of some substance — as it plainly was — and that the future representation be "in connection with" the same matter —

as it plainly is.  *McBean*, cited by Plaintiff, is not to the contrary.  Applying the predecessor to

Rule 1.11, Judge Lynch found that the case the former Assistant Corporation Counsel worked on

for the City was "sufficiently distinct from the instant action" because, although both cases

challenged the City's policy regarding strip searches of arrestees, the two cases had different

parties, facts, and legal issues.  *McBean*, 2003 WL 21277115, at *3.  Here, as stated above, there

can be no argument — and Plaintiff made no serious argument, citing only the irrelevant factor

of the time elapsed since her employment (*see* Pl.'s Hagan Mem. 13) — that the two matters are

distinct.  Hagan previously responded to Goodwine's discrimination claims on behalf of DoITT

and Commissioner Post (and others); she may not now prosecute those claims against DoITT and

Commissioner Post (and others) on behalf of Goodwine.

 For the same reasons, Hagan's appearance "posed a significant risk of trial taint."

*Glueck*, 653 F.2d at 748.  And there were no strong countervailing reasons to allow Hagan to

proceed.  *See Murray*, 583 F.3d at 180 (identifying interests against disqualification, including

the interests in judicial efficiency and certainty held by prospective jurors, other litigants, and the

public in general).  This case is still in its early stages.  Further, Defendants promptly opposed

Plaintiff's motion to substitute Hagan as counsel, and the Court stayed briefing of Defendants'

pending motion to dismiss until Plaintiff's motion regarding substitution of counsel was

resolved.  (*See* Docket No. 32).  Thus, Hagan's disqualification has resulted in little or no

inefficiency and delay.  (Moreover, to the extent Hagan, being already familiar with the matter,

provided an advantage, that advantage is precisely the reason she should be disqualified.)

Plaintiff certainly has the right to counsel of her choice.  But she could not, and cannot, choose a

lawyer whose appearance would violate the ethical rules governing attorney conduct.  For these

reasons, Hagan was disqualified from serving as Goodwine's counsel in this lawsuit, and

Plaintiff's motion to substitute her current counsel was denied to the extent she sought to substitute Hagan.

**B. The Disqualification of Canfield**

The Court turns, then, to Plaintiff's motion to disqualify Canfield. The witness-advocate rule, set forth in Rule 3.7 of the New York Rules of Professional Conduct, provides in relevant part that "[a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." N.Y. R. Prof'l Conduct § 3.7(a).[4] On a motion to disqualify based on the witness-advocate rule where, as here, the moving party alleges that it intends to call her adversary's attorney, the movant must demonstrate both that the lawyer's testimony is "necessary" and that there exists a "substantial likelihood that the testimony would be prejudicial to the witness-advocate's client." *Finkel v. Frattarelli Bros., Inc.*, 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010) (citing *Purgess*, 33 F.3d at 144, and *Murray*, 583 F.3d at 178). The inquiry into the necessity of a lawyer's testimony takes into account "factors such as the significance of the matters, weight of the testimony, and availability of other evidence." *Id.* (internal quotation marks omitted); *see also S & S Hotel Ventures Ltd. P'ship*, 69 N.Y.2d at 446 ("Testimony may be relevant and even highly useful but still not strictly necessary."). Prejudice "exists where the testimony would be sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Finkel*, 740 F. Supp. 2d at 373 (internal quotation marks omitted). Where the witness-advocate is "not acting

---

[4] As noted, the Rules of Professional Conduct took effect in 2009. Because the changes to the witness-advocate rule were stylistic, rather than substantive, courts have continued to apply cases decided under the former rules to new cases. *See, e.g.*, *Gabayzadeh v. Taylor*, 639 F. Supp. 2d 298, 303 (E.D.N.Y. 2009).

as trial counsel," the concerns animating Rule 3.7 are "absent or, at least, greatly reduced." *Murray*, 583 F.3d at 178.

Applying these standards to Plaintiff's motion to disqualify Canfield, Plaintiff failed to show that disqualification was warranted. First and foremost, Plaintiff failed to show that Canfield's testimony is "necessary." During her time at DoITT, Canfield does appear to have joined Myles Driscoll, DoITT's Director of Labor Relations, at a May 10, 2012 meeting with Goodwine regarding her complaints concerning a co-worker's threatening acts and the possibility of mediating that dispute. (Decl. Special Hagan Supp. Pl.'s Mot. To Disqualify (Docket No. 41), Ex. 2, at 4). But Canfield apparently had no involvement in DoITT's investigation into those (or Plaintiff's other) complaints. (Defs.' Canfield Mem. 6). Nor was Canfield involved in Plaintiff's alleged forced retirement in February 2014; indeed, Canfield had left DoITT eight months earlier. (*Id.*). Canfield's minimal involvement, in a single meeting, likely explains why Plaintiff fails to mention her (not to mention Driscoll and the issue of forced mediation) anywhere in the amended complaint.[5] That, and the fact that Plaintiff could call Driscoll to testify as to the May 10, 2012 meeting, distinguishes this case from *E.E.O.C. v. Bardon, Inc.*, No. 08-CV-1883 (RWT), 2010 WL 323067 (D. Md. Jan. 19, 2010), upon which Plaintiff relies most heavily. There, a company's labor counsel was disqualified as trial counsel because, as alleged in the plaintiff's complaint, the lawyer had performed the internal investigation into the plaintiff's complaint of sexual harassment and "was a primary actor in the

---

[5]     Plaintiff appeared to plead new factual allegations concerning Canfield in her memorandum of law (*see* Pl.'s Canfield Mem. 7-8), but "to the extent that [Plaintiff was] seeking to allege new or different facts, the proper means of doing so is in a motion to amend [her] complaint under Federal Rule of Civil Procedure 15(a), not in [her] brief." *Peabody v. Weider Publ'ns, Inc.*, 260 F. App'x 380, 384 (2d Cir. 2008).

firing of" the plaintiff.  *Id.* at *2; *see also id.* at *1 n.1 (collecting the complaint's allegations that referenced the disqualified counsel's role in the investigation and firing).

In any event, even if Plaintiff could have shown that Canfield's testimony was "necessary," Plaintiff failed to demonstrate a substantial likelihood that Canfield's testimony would be prejudicial to Defendants.  Indeed, Plaintiff simply asserted that it would "indeed prove prejudicial," without offering any further explanation.  (Pl.'s Canfield Mem. 11).  Such a conclusory assertion falls well short of satisfying the heightened burden of demonstrating "specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring to the witness-advocate's client is substantial."  *Murray*, 583 F.3d at 178.  In short, Plaintiff's motion plainly failed on the merits.

Finally, the Court would have denied Plaintiff's motion at this stage of the case even if it had some potential merit.  Plaintiff herself conceded that the motion "may be premature" as the parties had not yet even begun discovery and Plaintiff's motion related primarily to "potential issues . . . should this matter proceed to trial."  (Pl.'s Canfield Mem. 5).  This case may never proceed to trial — due, for example, to settlement or to resolution of a dispositive motion, one of which is currently pending (Docket No. 18) — and, even if it did, Canfield might be able to serve on the trial team without running afoul of Rule 3.7, by not advocating before the jury.  *See Murray*, 583 F.3d at 179 (noting that a trial witness who was a member of the defendant's trial team, but who would not "act as an advocate before the jury," is *not* "properly considered trial counsel for purposes of Rule 3.7(a)").  Lastly, on the issue of timing, the Court is not blind to the fact that, while Canfield had appeared on behalf of Defendants as early as June 25, 2015 (*see* Docket No. 4), Plaintiff filed her motion to disqualify Canfield only after Defendants had opposed the substitution of Hagan.  Given its conspicuous timing and lack of merit, Plaintiff's

motion appeared to be precisely the sort of "tactical . . . motion[] to disqualify counsel" against which "courts must guard." *Murray*, 583 F.3d at 178 (internal quotation marks omitted). Accordingly, Plaintiff's motion to disqualify Hagan was denied.

## CONCLUSION

For the reasons stated above, Plaintiff's motions to substitute Hagan as her own counsel and to disqualify Canfield as defense counsel were DENIED.

One issue remains: the issue of sealed and redacted submissions. Defendants submitted heavily redacted pages of Hagan's notes in support of their opposition to Hagan's substitution. (*See* Hagan's Redacted Notes). In turn, Hagan submitted her reply memorandum of law, a declaration, and ten different exhibits entirely under seal. (*See* Docket No. 43). By previous order, the Court directed the parties to show cause why sealing or redacting their submissions was "consistent with the presumption in favor of access to judicial documents." (Docket No. 38). Defendants contend that the redactions of Hagan's notes are proper because the redacted materials were irrelevant to this case. (Docket No. 44). The Court agrees, except as to two notations that are, as the discussion above makes clear, plainly relevant: the notation to the right of "Adele Goodwine" on page 7 of Hagan's redacted notes and Hagan's observation on page 9 of her notes that Goodwine was the "ring leader of [the] class." But because this Opinion and Order discloses the content of those notes, the Court sees no need for Defendants to re-redact and re-file the notes. Plaintiff does not actually defend her request to seal her reply materials, but a review of the exhibits to her declaration makes clear that they may contain confidential City information. Accordingly, no later than **February 5, 2016**, Defendants shall advise the Court if they have any objection to Plaintiff's reply materials being publicly filed (in redacted or

unredacted form) and explaining why.  In the absence of such an objection, Plaintiff shall file all

of the materials at issue on ECF by **February 8, 2016**.

The Clerk of Court is directed to terminate Docket No. 44.


SO ORDERED.

Date:   February 1, 2016
        New York, New York

JESSE M. FURMAN
United States District Judge